IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NED JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:04-cv-933-F |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| TRANSPORTATION, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Ned Johnson (hereinafter "Johnson") brings suit against his employer, the Alabama Department of Transportation (hereinafter "ALDOT"), Transportation Director Joe McInnes, Assistant Transportation Director L.D. Morris, and Chief of Engineering Division, Seventh Division, Mike Griffin (hereinafter collectively "Defendants"), for (1) alleged race discrimination and retaliation in violation of 42 U.S.C. § 1981; (2) alleged race discrimination and retaliation in violation of 42 U.S.C. § 1983; (3) alleged violation of his First Amendment free speech rights in violation of 42 U.S.C. § 1983; and (4) race discrimination and retaliation in violation of Title VII, 42. U.S.C. 2000(e) *et. seq.* The Defendants deny the allegations of discrimination, retaliation, and First Amendment violations. Defendants also assert the affirmative defense of qualified immunity and that this suit is barred by the Eleventh Amendment to the United States Constitution. This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. # 11).

**I. Jurisdiction and Venue**

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights) and 42 U.S.C. § 2000(e) to 2000(e)-17 (Title VII). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations of each.

## II. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a

2

genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

### III. Facts

The Court has carefully considered all documents submitted in support of and in opposition to the motion.  The submissions of the parties establish the following facts.

*A.    Johnson's Background*

Johnson is an African-American male who for all material times has been employed by ALDOT.  Johnson graduated from Bullock High School in 1985 having had vocational courses and training in automotive mechanics.  In 1987, he was certified in Diesel Mechanics by John Patterson State Technical College, Montgomery, Alabama.   In 1991, Johnson was hired by ALDOT for the position of Heavy Equipment Mechanic.  In 1994, he sought and received a transfer from Troy, AL to Montgomery, AL to work as an automotive mechanic for the Alabama Forestry Commission.  In 1995, he was transferred back to

ALDOT in Troy, where he worked as an automotive mechanic, then as Heavy Equipment Mechanic.

B.     *Johnson's Application for Promotion*

In April 1999, an announcement was published announcing the solicitation of applications for the position of Equipment Maintenance Superintendent (Class Code 90466). According to an ALDOT Career Path Manual, the position is characterized as a "supervisory/management position."   The manual states that one of the minimum qualifications for the position is "ten years of experience in automotive and/or heavy equipment parts, repair, or supply, to include five years of supervisory administration experience, preferably in fleet management."  Applications for the position were submitted by Johnson and by his supervisor, Clyde J. Wares (a Caucasian male).

At the time of the announcement, the hiring and promotion procedures of ALDOT were governed by an agreement entered into by the parties in *Reynolds v. Alabama Department of Transportation*, CV-85-T-665-N.  The agreement, entitled Joint Report on Agreement Regarding Interim Appointment Procedures, required the following hiring procedure:

1.     The State Personnel Department screens applicants to make sure they meet the minimum qualifications for the position. The applications of the qualified persons are then forwarded to the Auburn University at Montgomery Center for Business (hereinafter "AUM").

4

2.    The qualified persons are administered the Hogan Personality Test and a banded list of applicants is created based upon the results of that test. This list is used to determined which applicants will be given a ranking device called the Organizational Citizen Behavior Interview (hereinafter "OCB interview").

3.    OCB interviews are conducted exclusively by personnel from AUM. A ranked order list is created on the basis of the interviews.

4.    The appropriate ALDOT supervisory personnel then selects an applicant from the list of the top five ranked eligible names for the geographic location. The *Frazer* no-bypass rule applies to selections from this list.[1]

On April 24, 2001, Defendant Griffin submitted a request to fill the vacant position of Equipment Maintenance Superintendent in the Seventh Division. On May, 20, 2001, Ronald Green, Executive Assistant Transportation Director, wrote to AUM and requested a list of applicants from which to fill the vacant position. On January 29, 2002, ALDOT received the requested list from AUM. The list ranked Johnson as the number one applicant. On March 21, 2002, Green forwarded the list to Griffin with instructions on proceeding with

---

[1]. The *Frazer* no-bypass rule states that:
Defendants shall not appoint or offer a position to a lower-ranking white applicant in a certificate in preference to higher-ranking available Negro applicant, unless the defendants have first contacted and interviewed the higher-ranking Negro applicant and have determined that the Negro applicant cannot perform the functions of the position, is otherwise unfit for it, or in unavailable. In every instance where a determination is made that the Negro applicant is unfit or unavailable, documentary evidence shall be maintained by the defendants that will sustain such finding.
*United States v. Frazier*, 317 F.Supp. 1079, 1091 (M.D. Ala. 1970)                    .

5

interviews.  Johnson was interviewed for the position by two ALDOT officials.  A letter sent to Johnson dated April 1, 2002 stated that he would assume the duties of Equipment Repair Superintendent effective May 1, 2002 until the position could be properly filled. A Selection Form dated April 26, 2002 indicates that Johnson was selected to fill the position of Equipment Maintenance Superintendent.  The form indicates that the reason he was selected was because he was listed as the "No. 1 Applicant."  It also indicates that he was not the best applicant for the position and that he was not selected because of his work experience, training, ALDOT job performance, or any coursework with ALDOT.

On April 16, 2002, Wares filed a complaint with ALDOT asserting that he had initially received a determination that he was not qualified, then, after resubmitting the application, was informed that he was in fact qualified.  On April 30, 2002, he was temporarily given the position of Equipment Maintenance Superintendent until the position could be properly filled.  An investigation of his complaint was conducted and an Investigative Determination report was issued on May 23, 2002.  According to the report, when Wares' application was reviewed on November 16, 2001 for minimum qualifications, his supervisory experience was mistakenly overlooked.  After Wares resubmitted his application, it was reevaluated and ALDOT determined that Wares did in fact meet the minimum qualifications.  The report concluded that Wares should not have been removed from consideration for the position because he was minimally qualified.  The report also found that "[t]he top candidate on the ranked list of five [Johnson] should not have been

allowed to compete for the position because he lacked the required 5 years of supervisory experience."   However, at least as of April 1, 2001, the position of Heavy Equipment Mechanic, which Johnson had held from 1991 to 1994 and from 1995 to 2004, was classified as a "supervisory/management position."   In addition, during his time as Heavy Equipment Mechanic, Johnson was "on call" as acting supervisor, filling in for his direct supervisors.

On June 23, 2003, a new announcement was posted soliciting applications for the position. On July 8, 2003, Defendant Morris sent a letter to the *Reynolds* counsel stating that ALDOT did not intend to offer the position to Johnson because he did not meet the minimum qualifications with respect to supervisory experience.   A new list of eligible candidates was created, on which Wares was the second-ranked individual.   The Selection Form filled out by Wares' interviewers indicates that he was best qualified for the position. The form cites his "[f]ourteen years progressive experience with ALDOT in classifications of progressive supervisory responsibility."   The form also notes that Wares' "previous job performance and work ethics have produced exceptional productivity and work quality from the department he supervises."   On February 9, 2004, Wares was notified that he was appointed permanently to the position of Equipment Maintenance Superintendent.

B.    *Wares' Previous Job Performance*

On or about July 30, 2002, female staff supervised by Wares found numerous pornographic photographs at the ALDOT work site.   It was later established that the

photographs were from internet pornography websites and had been obtained by Wares over a two month period using an ALDOT computer. The website names indicated that the photographs portrayed underage women. Wares' computer was subjected to a forensic review by ALDOT, but the review found no evidence that the pornography accessed by Wares involved underage women. Shortly after the photographs were discovered, they were given to Defendant Griffin, who was then Wares' supervisor. Griffin orally admonished Wares for the photographs, but did not otherwise discipline Wares and continued to give Wares positive performance appraisals during this period. Griffin filled out two Employee Performance Appraisal forms for Wares during this time, one covering August 1, 2001 to August 1, 2002 and the other covering August 1, 2002 to August 1, 2003. Both forms indicate that Wares was in compliance with the rules during the time period and neither indicates any disciplinary actions taken against Wares.

C.    *Johnson's EEOC Charges*

On July 17 2002, Johnson filed his first Equal Opportunity Employment Commission (hereinafter "EEOC") charge (No. 130 A20 2844) against ALDOT, stating that Defendants had denied him a promotion on the basis of race in violation of Title VII. A Right to Sue letter was subsequently issued by the EEOC, but Johnson reserved his right to subsequently raise issues of discrimination or retaliation in future EEOC charges. At that time, Johnson complained to coworkers that the decision not to promote him was made on the basis of race. On October 10, 2003, Johnson filed a second EEOC charge (No. 130-2004-00167)

and received a Right to Sue letter regarding said charge on or about July 8, 2004.

## IV. Discussion

*A.     Immunity Defenses*

Where, as here, the defendants are state actors, a plaintiff's § 1981 claims merge into his or her § 1983 claims, and courts treat them as a single claim. *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1309 (M.D. Ala. 2000). Therefore, Johnson's claims of § 1981 violations, as well as his First and Fourteenth Amendment claims (made pursuant to § 1983) , will all be considered together as § 1983 claims for the purpose of Defendants' immunity defenses.[2]

*1.     Eleventh Amendment Immunity*

The Defendants are correct in asserting that the Eleventh Amendment bars § 1983 claims for money damages against them in their official capacities. Mem. in Supp. of Summ. J., 14; *see also Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Therefore, summary judgment is due to be granted as to the claims for money damages brought against the individual Defendants in their official capacities. The Eleventh Amendment also bars § 1983 claims against states or agencies or departments of states for

---

[2] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
>
> regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

injunctive relief.  *See Smith v. State of Ala.*, 996 F. Supp. 1203, 1210 (M.D. Ala. 1998); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) ("[A] suit in which the State or one if its agencies or departments is named as a defendant is proscribed by the Eleventh Amendment. . . . This jurisdictional bar applies regardless of the nature of the relief sought.").  Because ALDOT is a state agency, summary judgment is due to be granted as to all claims brought under § 1983 against ALDOT.

The Eleventh Amendment does not bar claims for equitable relief against the individual Defendants in their official capacities, as long as those claims are only for prospective injunctive relief.  *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).  Johnson's request for a promotion to the position of Equipment Maintenance Superintendent may be construed as one of prospective injunctive relief.  *Cf. Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538 (D.N.J. 1989).  Therefore, Johnson's request for a promotion is not barred by the Eleventh Amendment as to the individual Defendants in their official capacity.  The Eleventh Amendment also does not bar claims (for monetary or injunctive relief) against the individual Defendants in their individual capacities.  *See Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992).

In sum, the Eleventh Amendment bars all § 1983 claims against ALDOT and all § 1983 claims against the individual Defendants in their official capacities for money damages. The Eleventh Amendment does not bar Johnson's request for a promotion as to the individual Defendants in their official capacities, nor does it bar any claims against the individual

Defendants in their individual capacities.  However, Defendants also assert the defense of qualified immunity for actions taken in their official and individual capacities.

2.    *Qualified Immunity*

The qualified immunity doctrine insulates government agents from personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The test for good faith turns on the objective reasonableness of the official's conduct in light of established law: "government officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.  The Eleventh Circuit applies this standard using a two-step analysis.  First, the court must determine whether the official was acting within his or her discretionary authority when the allegedly wrongful act occurred.  If the official was acting within his or her authority, the court must then determine whether the plaintiff has established that the official's conduct violated a clearly established statutory or constitutional right.  *Sims v. Metro. Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992).  Clearly established law consists of either controlling authority in the jurisdiction at the time of the incident or a consensus of cases of persuasive authority.  *Wilson v. Layne*, 526  U.S. 603, 617, 119 S.Ct. 1692, 1700, 143 L.Ed.2d 818 (1999).

The Defendants assert, and Johnson does not contest, that the Defendants' actions that

11

are at issue in this case were performed in their roles as ALDOT employees, and therefore were within the scope of their discretionary authority.  There being no dispute on this issue and no evidence that Defendants were acting outside the scope of their discretionary authority, the Court finds that Defendants have met their burden on the first prong of the qualified immunity analysis.

The Court must now determine whether Johnson has met his burden of proving that the Defendants' actions violated clearly established statutory or constitutional law.  The United States Supreme Court has set forth a two-part test for courts to apply when making this determination.  The court must first ask the following threshold inquiry: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Brosseau v. Haugen,* __U.S. __, 125 S. Ct. 596, 598, 160 L.Ed.2d 583 (2004) (quoting  *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed. 272 (2001)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (2001) (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. at 2156).

a.      *Race Discrimination Claims*

Johnson alleges that Defendants unconstitutionally discriminated against him on the

basis of race by failing to promote him to the position of Equipment Maintenance Superintendent.  There is no question that discrimination in promotions of state employees on the basis of race is a violation of the Equal Protection Clause.  *See, e.g., Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995) (noting the "patently obvious illegality of racial discrimination in public employment").  The question is whether Defendants' actions amounted to unconstitutional race discrimination.  When an employee seeks to prove that his employer discriminated against him on the basis of race, the test to be applied is the familiar burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny.

First, the plaintiff must establish a *prima facie* case of racial discrimination.  This is done by showing (1) that he is a member of a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.  It is undisputed that Johnson is African-American, that he was rejected for the promotion to Equipment Maintenance Superintendent, and that ALDOT then continued to seek applicants for the position.

There is a question as to whether Johnson was qualified for the position.  Because this cause is before the Court on Defendants' Motion for Summary Judgment, the Court is required to resolve all issues of material fact in favor of Johnson.  Johnson alleges that he did

in fact have the five years of supervisory experience necessary to meet the minimum qualifications for the position.  This allegation is supported by the fact that Johnson held the position of Heavy Equipment Mechanic for more than five years, and ALDOT's manual deems that position to be a "supervisory/management position." Johnson also alleges that while he was a Heavy Equipment Mechanic, he was "on call," meaning that he was available to fill in for his supervisors and did so on numerous occasions.[3]  This is sufficient evidence to show that Johnson was minimally qualified for the position.  Thus, Johnson has met his burden of establishing a *prima facie* case of discrimination.

Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action.  *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). The employer's burden is "exceedingly light."  *Holifield*, 115 F.3d at 1564 (citations omitted).  The burden is one of production, not persuasion, and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory or retaliatory reason.  *See, e.g., Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d, 1314, 1321 (M.D. Ala. 2001).  In this case, Defendants assert that their reason for not promoting Johnson was that they believed he was not minimally qualified for the position.  The ALDOT grievance officer investigating Wares' complaint found Johnson

---

[3] Defendants claim that this "fill-in" time is not counted towards supervisory experience, but viewing the facts in a light most favorable to the plaintiff, the Court will assume that it does count towards Johnson's supervisory experience.

to have only a total of 17 months' supervisory experience, not the required five years.  Defs.'
Ex. 15.  Even assuming Johnson did in fact meet the minimum qualifications, Defendants'
belief that he did not is enough evidence that could allow a rational fact-finder to conclude
that the decision not to promote Johnson was not made for a discriminatory reason.

Once the employer offers a legitimate, non-discriminatory reason, the burden returns
to the employee to supply "evidence . . . sufficient to permit a reasonable fact-finder to
conclude that the reasons given by the employer were not the real reasons for the adverse
employment decision."  *Davis,* 161 F. Supp. 2d at 1322 (*citing Chapman v. AI Transp.,* 229
F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)).  This burden may be met by "persuading the
court either directly that a discriminatory reason more than likely motivated the employer or
indirectly that the proffered reason for the employment decision is not worthy of belief." *Id*.
at 1314 (*citing Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Even assuming Johnson was in fact qualified for the position, this alone is insufficient
to establish that the proffered reason (that Defendants believed he was not qualified) was
pretextual or unworthy of belief; as long as his employers' beliefs were reasonable, they can
be mistaken without it implying that they acted with discriminatory motive.  *See Rojas v.
Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (stating that "[w]e are not interested in
whether the conclusion is a correct one, but whether it is an honest one. . . . our sole concern
is whether unlawful discriminatory animus motivated a challenged employment decision.");
*Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1339 (11th Cir. 2000), *reh'g denied,* 218

F.3d 749 (11th Cir. 2000) ("a plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race.").  While Johnson alleges that Defendants did not wish to promote him because of his race, and therefore intentionally overlooked his supervisory experience, he provides no evidence (other than his own affidavit) showing that ALDOT's failure to consider his supervisory experience was anything other than a mistake.   That is, Johnson provides no evidence that his supervisory experience was intentionally ignored by ALDOT because they did not wish to promote him because of his race.  Plaintiff's own allegations are simply not sufficient to demonstrate discrimination or retaliation  by the defendants.  *See Earley v. Champion Internat'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (stating that "the plaintiff must . . . present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice.").  As is commonly stated, "it is not the role of federal courts to second-guess the . . . decisions of business entities. . . . The reason offered by an employer for an action does not have to be a reason that the judge or jurors would act on or approve." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999) (quotations and citations omitted).  Therefore, even viewing the facts in a light most favorable to Johnson, he has not met his burden of proving that the Defendants' reason for not promoting him was pretextual, and therefore has not met the burden of showing that the Defendants violated constitutional law by overlooking his supervisory experience.  Thus, Defendants are entitled to qualified immunity on this

issue.

Additionally, Johnson alleges race discrimination in that Wares was promoted despite his improper use of an ALDOT computer. Specifically, Johnson asserts that Wares should have been fired for his actions, but was instead promoted. Since this is another allegation of race discrimination, the same *McDonnell Douglas* analysis must be applied. For the reasons discussed above, Johnson has presented enough evidence to make a *prima facie* case of race discrimination.

It is undisputed that, aside from receiving a verbal warning, Wares was not disciplined for his improper use of an ALDOT computer.[4] Now, the Court must determine whether the Defendants' have presented evidence of a legitimate reason not to discipline Wares. Defendant Griffin testified in his deposition that the first time an employee accesses adult pornography from an ALDOT computer, he is only subject to a verbal warning, which is what Wares received. This reason is sufficient for a rational fact-finder to conclude that the decision not to discipline Wares was not made for a discriminatory reason.

Johnson claims that Defendants' reason is not legitimate because Wares had in fact viewed child pornography on the ALDOT computer, a violation which Griffin acknowledged would lead to the termination of an ALDOT employee. Griffin testified that Wares' computer was subjected to a forensic review by ALDOT, and that review found no evidence that the pornography accessed by Wares involved underage women. On the other hand,

---

[4] Wares' Employee Performance Appraisal forms during this period indicate that Wares was in compliance with all rules and no disciplinary actions were taken against him.

Johnson asserts that the names of the websites from which the photographs were printed indicate that the photographs were of underage women.  Thus, viewing the evidence in the light most favorable to Johnson, the Court assumes that the photographs were child pornography, which should have subjected Wares to termination.  However, a mere mistake on the part of Defendants in deciding that the photographs were of adults rather than of minors is not proof of discrimination.  Therefore, Johnson has not met his burden of showing that Defendants failed to discipline Wares because of his race, thus  Defendants did not violate Johnson's constitutional rights by promoting Wares, and Defendants are entitled to qualified immunity on this issue.

Finally, Johnson alleges that the use of supervisory experience as a minimum qualification for the position is unconstitutional because it has a racially discriminatory impact.  Disparate impact occurs when an employer bases employment decisions on a criterion that is neutral on its face but disfavors African-American employees in operation. "[P]ractices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices." *Griggs v. Duke Power Co.*, 401 U.S. 424, 430, 91 S.Ct., 849, 853, 28 L.Ed.2d 158 (1971).  Johnson alleges that ALDOT historically had prevented African-American employees from having supervisory experience, which kept them from being eligible for promotions.  Johnson cites the *Reynolds* litigation, which established that ALDOT had historically made hiring and promotion decisions on the basis of race.

18

Specifically, African-American employees were given temporary acting supervisory responsibilities, but were prevented from having "recognized" supervisory experience, thereby limiting their promotion eligibility. In *Walker v. Jefferson County Home*, 726 F.2d 1554 (1984), a nursing home had a past policy of favoring whites over African-Americans for movement into positions from which they could gain initial supervisory experience. *Id.* at 1558. In that case, as here, the employer required prior supervisory experience for a promotion to a supervisory position. The Eleventh Circuit held that, though this policy was neutral on its face, it had a discriminatory impact on African-Americans:

> [B]lacks were first denied the opportunity to obtain supervisory experience, and then were told that they were "unqualified" for promotion because they lacked the very quality that had intentionally been denied to them. Thus, the requirement of supervisory experience served to freeze the status quo of prior discriminatory employment practices.

*Id.* As the situation in *Walker* is almost identical to the situation at issue in this case, the Court finds that Johnson has put forth enough evidence to establish a *prima facie* case of discriminatory impact.

Once the plaintiff has shown a prima facie case of discriminatory impact, the burden then shifts to the employer to show that the criterion has a "manifest relationship" to the employment in question, in other words, that use of the criterion is a "business necessity." *See Griggs*, 401 U.S. at 431, 91 S.Ct. at 853. In determining whether the employer has met its burden, the court looks at the amount of skill required for the position and the economic and human risks involved. *Walker*, 726 F.2d at 1558. When the job requires little skill and

19

training and the consequences of hiring an unqualified applicant are insignificant, the employer's burden in defending the criterion is heavy.  *Id.*  Here, the only evidence of the requirements of the position is the ALDOT Career Path Manual listing for Equipment Maintenance Superintendent.  Defs.' Ex. 3.  While the listing describes the duties and responsibilities of the position and gives examples of the type of work performed, it is not enough to meet the Defendants' burden of showing that the supervisory experience requirement is a business necessity.  Therefore, looking at all of the evidence in a light most favorable to Johnson, Defendants have violated Johnson's constitutional rights by making supervisory experience a minimum requirement.[5]

Now, the Court must decide whether the right was clearly established.  *Vinyard*, 311 F.3d at 1346.  As discussed above, the Eleventh Circuit, in the *Walker* case, determined that a similar use of supervisory experience as a qualification for promotion was sufficient evidence of discriminatory impact.  *Walker*, 726 F.2d at 1558.  Therefore, it was clearly established that in this jurisdiction, the use of supervisory experience as a qualification for promotion, absent a showing of business necessity by the employer, is unconstitutional.  Therefore, the Defendants are not entitled to qualified immunity on this issue.

---

[5] Should the employer carry the burden of showing business necessity, the employee then has the burden to show that the employer was using the criterion as a pretext for discrimination or that other criteria were available with a lesser adverse impact on the minority that would still serve the employer's needs.  *Craig v. Ala. State Univ.*, 804 F.2d 682, 685 (11th Cir. 1986) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975)).  Since the employer has not met its burden here, the Court need not address this issue.

In sum, Defendants are entitled to qualified immunity as to all of Johnson's claims of race discrimination, except for his claim concerning the discriminatory impact of the use of supervisory experience as a minimum qualification for promotion.  That is, Defendants may be sued in their individual capacities for money damages on this claim.

b.    *First Amendment Claims*

Johnson alleges that Defendants violated his First Amendment free speech rights in that their failure to promote him was in retaliation for the filing of his first EEOC charge and for complaints to coworkers about the 2002 denial of his application for promotion.

The first question the Court must ask is whether, taken in the light most favorable to Johnson, the Defendants' conduct violated his First Amendment rights.  *Brosseau,* 125 S. Ct. at 598.  The answer turns on whether the EEOC charge and/or the complaints to coworkers were matters of public concern:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the most appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed. 708 (1983).  Generally, speech which exposes personally suffered discrimination for personal benefit is not entitled to First Amendment protection.  *Badia v. City of Miami*, 133 F.3d 1443, 1445 (11th Cir. 1998).  Both the EEOC charge and Johnson's complaints to coworkers about not receiving the promotion constitute speech about personally suffered discrimination for personal benefit.

21

Thus, even assuming that Defendants failed to promote Johnson in retaliation for this speech, they did not violate his First Amendment rights, and are therefore entitled to qualified immunity from all of Johnson's First Amendment claims.

Qualified immunity precludes only suits for damages, not for equitable relief. *See Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir. 1993). Therefore, Defendants cannot claim qualified immunity as to Johnson's request to be placed in the position of Equipment Maintenance Superintendent.

B.   *Remaining Section 1983 Claims*

The only claims not barred by either the Eleventh Amendment or qualified immunity are the claims for money damages against the individual Defendants as to the supervisory experience claim and for equitable relief (Johnson's request for a promotion) as against the individual Defendants on all § 1983 claims . For the reasons set forth in the discussion of qualified immunity, the Defendants actions, other than the use of supervisory experience as a qualification, were not unconstitutional, therefore summary judgment is due to be granted in favor of the Defendants as to all of Johnson's § 1983 claims, except the claim concerning supervisory experience. As to the supervisory experience claim, for the reasons discussed above, Johnson has put forth enough evidence of unconstitutional discrimination in order for that claim to survive summary judgment.

C.   *Title VII Claims*[6]

---

[6] It has been stipulated that the Title VII claims are only against ALDOT, not the individually-named Defendants.

In addition to the § 1983 claims, Johnson alleges race discrimination and retaliation in violation of his rights under Title VII, 42 U.S.C. § 2000(e) *et. seq.*  Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a).  Johnson alleges that the acts and/or omissions of Defendants involved discrimination and retaliation in violation of Title VII.  Title VII claims are subject to the same *McDonnell Douglas* balancing that applies to § 1983 race discrimination and retaliation claims.  *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir. 1991).  For the reasons set forth in the discussion of qualified immunity, ALDOT has not violated Title VII, except for its use of supervisory experience as a minimum qualification for promotion, therefore summary judgment is due to be granted in favor of ALDOT as to all of Johnson's Title VII claims, other than the claim concerning supervisory experience.

## V. Conclusion

For the reasons stated above, it is hereby ORDERED that the Defendant's Motion for Summary Judgment (Doc. # 11) is GRANTED in part and DENIED in part as set forth above.

DONE this 5th day of October, 2005.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE